STATE of Wisconsin, Plaintiff-Respondent,

v.

Shannon L. LA BINE, Defendant-Appellant. [Case No. 94–2444–CR] †

STATE of Wisconsin, Petitioner-Respondent,

v.

SHANNON L. L., Respondent-Appellant. [Case No. 94–2445]†

Court of Appeals

*Nos. 94–2444–CR, 94–2445. Submitted on briefs August 22, 1995.—Decided November 29, 1995.*

(Also reported in 542 N.W.2d 797.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael J. Backes* of *Law Offices of Michael J. Backes* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Gregory M. Posner-Weber*, assistant attorney general.

Before Anderson, P.J., Brown and Snyder, JJ.

SNYDER, J. Shannon L. LaBine appeals from a judgment of conviction for homicide and an order denying his motion for postconviction relief. Shannon challenges the jury's verdict on two grounds: (1) the trial court erred by admitting "other acts" evidence, and (2) the juvenile court erroneously applied the law when it permitted the release of certain juvenile infor-

mation. Shannon further asks this court to reexamine his juvenile waiver, which was the subject of an earlier appeal.[1] We conclude that the trial court properly exercised its discretion in admitting the other acts evidence, and the juvenile court acted within the applicable statute in permitting the release of the juvenile court information. Because there is no basis upon which to reexamine the juvenile waiver, we affirm.

The incident that gave rise to the underlying charges was the shooting death of Shannon's stepmother, Sandra LaBine. Shannon was fourteen years old at the time. The facts are not in dispute that Shannon shot Sandra once in the chest as she came up the basement stairs, and then shot her a second time, at close range, in the head. Shortly after Sandra's body was discovered, Shannon was apprehended and charged with delinquency. The State sought a juvenile waiver, and after a three-day hearing, the case was waived into criminal court.[2]

A jury found Shannon guilty of the charged crimes. Following the denial of his motions for postconviction relief, he appeals. We first address Shannon's contention that the trial court erred in admitting the other acts evidence.

Shannon's defense was that he lacked the intent to shoot or to kill Sandra and that the first shot fired was

---

[1] The juvenile waiver into adult court was appealed when it was granted and a stay of proceedings ordered. In an unpublished decision this court affirmed the waiver. *State v. Shannon L.L.,* No. 92-2094, unpublished slip op. (Wis. Ct. App. Dec. 30, 1992). A petition to review was denied by the supreme court.

[2] Shannon was charged under § 940.01(1), STATS. (first-degree intentional homicide), and § 939.63(1)(a)2, STATS. (penalties; use of a dangerous weapon). He was also charged with one count of armed robbery pursuant to § 943.32(1)(a), STATS.

an accident that resulted from an attempt to engage the safety on an unusually dangerous gun.[3] The defense then presented the second shot to the jury as an unthinking, unintentional reaction to Sandra's moan that occurred because of Shannon's fear and confusion.

The State portrayed Shannon's actions as part of a broader plan to rob Sandra, take her truck and run away without being intercepted by the police. In support of this portrayal, the State sought to introduce evidence that Shannon had taken Sandra's truck a month earlier to run away with a friend and Sandra thwarted his plan by notifying the police. The State argued that the prior incident was probative as a similar plan of truck theft with Shannon having an added intent and purpose of shooting Sandra to prevent her interference this time.

■

Shannon first argues that the trial court erred when it admitted the evidence of the prior taking of Sandra's truck. On review of evidentiary questions, the issue on appeal is whether the trial court exercised its discretion in accordance with acceptable legal standards and the facts of record. *State v. Pharr,* 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983). An appeals court will not find a misuse of discretion if there is a reasonable basis for the trial court's determination. *See id.*

■

The admissibility of other acts evidence is governed by § 904.04(2), STATS.[4] *State v. Parr,* 182 Wis. 2d

---

[3] In order to engage the safety on this particular gun, it was necessary to slowly lower the cocked hammer while simultaneously pulling the trigger.

[4] Section 904.04(2), STATS., provides:

349, 360, 513 N.W.2d 647, 650 (Ct. App. 1994). While this evidence is not admissible to prove the character of the accused, it may be used to establish, inter alia, motive and intent. *Id.* Under the well-established two-pronged test of admissibility, the court must first determine whether the proffered evidence is relevant. *Id.* If so, the second prong is whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury. *Id.* While the obvious purpose of all relevant evidence is to prejudice the individual against whom it is offered, *id.* at 361, 513 N.W.2d at 650, unfair prejudice refers to the risk that a jury may conclude that because the actor committed one bad act, he or she necessarily committed the charged crime. *State v. Mink,* 146 Wis. 2d 1, 17, 429 N.W.2d 99, 105 (Ct. App. 1988).

Shannon maintains that the other acts evidence of the prior taking of Sandra's truck was unduly prejudicial and irrelevant to the determination of his guilt or innocence. The trial court found that the prior incident was relevant to the disputed issues of Shannon's intent and to his defense of mistake or accident. The trial court weighed the probative value against the danger of unfair prejudice and concluded that the evidence was admissible, noting that "it clearly goes to motive and for that reason is also relevant. I don't think that it is unfairly prejudicial in any way."

---

(2) OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■

We agree that the evidence was probative to the issue of whether Shannon shot and killed his stepmother in order to avoid her interference with his taking of the truck. The evidence impacts upon Shannon's motive and intent to kill and counters his theory that he shot his stepmother by mistake. Based upon our independent review of the record, we conclude that the trial court did not erroneously exercise its discretion in finding the other acts evidence probative and admissible under § 904.04(2), STATS.

Shannon next raises an issue regarding a hearing before a ch. 48, STATS. (juvenile) court in which the juvenile court authorized the release of two court summonses and agreed to allow the State to elicit testimony from witnesses regarding Shannon's custody during the months preceding the shooting. The juvenile court hearing took place during the criminal trial.[5]

■

Initially, we note that it is only the fact that the order from the juvenile court was a nonfinal order that allows this to be included in the appeal from the criminal conviction.[6] "An appeal from a final judgment . . . brings before the court all prior nonfinal judgments,

---

[5] The judge who conducted the juvenile court hearing also presided over the criminal case. Prior to the hearing, the trial court had already ruled that the State would not be permitted to use "any juvenile court records for impeachment purposes. . . . Both parties are precluded . . . from making any reference to juvenile records or adjudications or alluding to records of any juvenile court proceeding."

[6] We do not address the situation that would occur if the order of the juvenile court had been reduced to a final order, other than to suggest that in such a case, it clearly would have to be the subject of a separate appeal.

orders and rulings . . . not previously appealed and ruled upon." Section 809.10(4), STATS. A final judgment or order "disposes of the entire matter in litigation as to one or more of the parties," § 808.03(1), STATS., whereas an intermediate, nonfinal order settles only ancillary matters. *Shuput v. Lauer,* 109 Wis. 2d 164, 170, 325 N.W.2d 321, 325 (1982).

Further, the State contends that Shannon has waived this appellate argument because it was not raised in the trial court. *See C.A.K. v. State,* 154 Wis. 2d 612, 624, 453 N.W.2d 897, 902 (1990). Waiver is a rule of judicial administration which we may, in the proper exercise of discretion, choose not to apply. *See Wirth v. Ehly,* 93 Wis. 2d 433, 443-44, 287 N.W.2d 140, 145-46 (1980). In recognition of the strong social policy implicit in the statutory protections of juvenile proceedings, *see State v. Gustafson,* 119 Wis. 2d 676, 685-86, 350 N.W.2d 653, 658 (1984), *modified on other grounds,* 121 Wis. 2d 459, 359 N.W.2d 920 (1985), *cert. denied,* 471 U.S. 1056 (1985), we choose to address the issue on the merits.

Shannon contends that the juvenile court erred when it authorized the release of two court summonses and permitted testimony regarding his placement. This was not a decision permitting testimony extracted from the juvenile record but rather a ruling allowing witnesses in the criminal trial to testify about their personal knowledge of Shannon's custody and living arrangements.

The issue of the release of juvenile records is governed by § 48.35, STATS. The application of a statute to undisputed facts is a question of law. *Sauer v. Reliance Ins. Co.,* 152 Wis. 2d 234, 240, 448 N.W.2d 256, 259 (Ct.

App. 1989). An appellate court is not bound by a trial court's conclusions of law and decides the matter de novo. *First Nat'l Leasing Corp. v. City of Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

When the State sought to introduce evidence which was related to Shannon's prior involvement with the juvenile system, the district attorney requested release of the information from the juvenile court. The release of records is governed by § 48.35, STATS. It states in relevant part:

> **(1)** . . . .
>
> . . . .
> (b) The disposition of a child, and any record of evidence given in a hearing in court, shall not be admissible as evidence against the child in any case or proceeding in any other court except:
> 1. In sentencing proceedings . . . and then only for the purpose of a presentence study and report;
> 2. In a proceeding in any court assigned to exercise jurisdiction under this chapter; or
> 3. In a court of civil or criminal jurisdiction while it is exercising the jurisdiction of a family court and is considering the custody of children.
> 4. The fact that a child has been adjudged delinquent on the basis of unlawfully and intentionally killing a person is admissible for the purpose of [the intestate succession statute].
> **(2)** Except as specifically provided in sub. (1), this section does not preclude the court from disclosing information to qualified persons if the court considers the disclosure to be in the best interests of the child or of the administration of justice.

In applying this statute, the juvenile court must make two determinations. First, the juvenile court must determine whether the requested information

implicates the prohibitions of subsec. (1)(b): is the information sought either "the disposition of a child" or a "record of evidence given in a hearing in court." If so, it cannot be released if it will be introduced as evidence in another court. *See Banas v. State,* 34 Wis. 2d 468, 474-75, 149 N.W.2d 571, 574-75 (knowing the intended use of the juvenile records was prohibited, the juvenile court judge may have been without power to order the release), *cert. denied,* 389 U.S. 962 (1967). If the information does not fall within the prohibited areas or will not be used as evidence, the juvenile court has discretion under subsec. (2) to disclose any information contained in the juvenile record if the court considers it to be "in the best interests of the child or of the administration of justice." Section 48.35(2), STATS.

■■■

Since the information requested was to be introduced as evidence in another court, the only means for allowing the release was if the information was outside the reach of § 48.35(1)(b), STATS. None of the exceptions outlined in subsec. (1) are relevant to this case. Here, the trial court ruled that juvenile records could not be introduced for evidentiary purposes pursuant to § 48.35(1)(b) and then determined as a juvenile court that the admission of the requested evidence was not contrary to the earlier ruling. If an independent review of the record reveals a basis for sustaining the trial court's action, we need not reverse. *State v. Pittman,* 174 Wis. 2d 255, 268, 496 N.W.2d 74, 80, *cert. denied,* 114 S. Ct. 137 (1993).

In *Sanford v. State,* 76 Wis. 2d 72, 250 N.W.2d 348 (1977), the supreme court concluded that there were limits to the reach of § 48.38(1), STATS.[7] *See Sanford,* 76

---

[7] Section 48.38(1), STATS., 1963, was repealed by Laws of 1977, ch. 354, § 62. It also restricted the use of juvenile court

Wis. 2d at 83, 250 N.W.2d at 353. The supreme court held that the testimony of a rape victim, describing a rape committed by the defendant while a juvenile, was not evidence protected by § 48.38(1). *Id.* The court reasoned that since no record of any juvenile court proceedings was introduced, the prohibitions of subsec. (1) were not implicated. *See id.*

We find the information sought in Shannon's case to be analogous to that in *Sanford*. The State sought permission to question Shannon's father, Karl, regarding Shannon's placement during the months preceding the shooting.[8] The testimony given covered only first-hand knowledge of where Shannon was physically residing during the period in question and who was caring for him.[9] In our review of the record, it is apparent that with regard to this testimony, as in *Sanford*, "no reference to or record of any juvenile court proceedings was introduced at the time of the . . . trial of this

---

dispositions as evidence in other courts in language similar to the current § 48.35(1)(b), STATS.

[8] During the trial, both Karl LaBine and Kathy Walber, a family friend with whom Shannon had been staying, were questioned.

[9] As an example of the testimony, Karl was questioned by the prosecution on redirect:

> Q. From that point in time, the time he went down to your ex-wife in Alabama and until the time of the court hearing in October, did he live with you? Shannon, I mean.
> A. He was home at times. I believe he spent most of his time with Kathy Walber [a family friend].
>
> . . . .
>
> Q. And then you had the October hearing?
> A. Yes.
>
> . . . .
>
> Q. So the agreement was he stay with Kathy until then?
> A. Yes.

defendant." *Sanford*, 76 Wis. 2d at 83, 250 N.W.2d at 353.

The other information which was released by the juvenile court were two court summonses which had been delivered to the LaBines' home prior to the shooting. The notices were taken as evidence from the LaBines' home during the police investigation and gave a date and time for a later court hearing. The notices never were a part of the juvenile record. Karl identified the notices in court as notices that he had received. He was asked whether there had been an upcoming court hearing at the time of the shooting, and he responded, "yes." Karl then was asked whether Shannon had any concerns that he would be removed from the home at the next court hearing. Karl responded:

> No. . . . Sandra and I were quite perturbed about it because in the social worker's office she told him he would be going back in front of the judge that he had always been to other than that one time, and that judge was probably just going to give him another verbal hand slap. He hadn't done anything bad enough to be taken out yet.

Based on our independent review of the record, we conclude that none of the information released by the juvenile court and admitted into evidence by the criminal court pertained to protected areas. The testimony by witnesses in the criminal case did not involve evidence of a juvenile court's disposition of Shannon, nor did it include the evidentiary record of a hearing. "Merely because [the] defendant was under the age of majority at the time . . . does not in itself bring the testimony . . . as to what then transpired within the

reach of either sec. 48.38, Stats., or the *Banas* holding."
*Sanford*, 76 Wis. 2d at 83, 250 N.W.2d at 353.

Shannon relies on *Gustafson* for his contention that the testimony about his placement and the court summonses were prohibited. His reliance is misplaced. The *Gustafson* court was concerned with the admission of a witness' prior juvenile adjudication and evidence of a no contest plea. *Gustafson*, 119 Wis. 2d at 686, 350 N.W.2d at 658. At a criminal trial, the State elicited testimony from a juvenile witness that the juvenile had been adjudged delinquent for events which occurred the same night as the adult's charged crimes. *Id.* at 681, 350 N.W.2d at 656. The juvenile also testified that he had pleaded no contest to the charges of delinquency. *Id.* The court held that it was error to allow this to be admitted into evidence,[10] noting that the evidence "relates to the disposition of R.G.'s case in juvenile court and record of evidence given in that court." *Id.* at 686, 350 N.W.2d at 658.

Having determined that the evidence was outside the reach of § 48.35(1)(b), STATS., the court is then allowed by subsec. (2) to permit the release of any juvenile information contained in the juvenile record if the court considers it to be "in the best interests of the child or of the administration of justice." Section 48.35(2).

The court must apply its discretion in making this determination. A discretionary decision is one a reasonable court could reach by a consideration of the relevant law, the facts and a process of logical reasoning. *State v. Robinson,* 146 Wis. 2d 315, 330, 431 N.W.2d 165, 170 (1988). In order to be sustained, a

---

[10] The supreme court ultimately concluded under the facts of that case that the error was harmless. *State v. Gustafson,* 119 Wis. 2d 676, 690, 350 N.W.2d 653, 660 (1984).

court's discretion must be demonstrably based on the record and must rely on the appropriate and applicable law. *Id.*

In seeking the release, the State argued that this information was necessary in order to clarify Shannon's placement. This became an issue because of the opening statement made by the defense. Shannon's counsel objected, agreeing that the issue of Shannon's placement could be addressed, but stating that there was no need to "accentuate any juvenile delinquency proceeding."[11] The State also requested permission to introduce two court summonses which had been delivered to the LaBines.

In reaching its decision to release the requested information, the juvenile court weighed Shannon's right of nondisclosure against society's interest in a full and fair trial in the criminal court proceeding, as mandated by § 48.35(2), STATS. The juvenile court issued an order authorizing the State to "elicit testimony concerning the custody and placement of Shannon LaBine" and to allow disclosure of the two court summonses. The juvenile court further noted that counsel was limited to the precise information outlined in the order. We conclude that the juvenile court reasonably exercised its discretion in finding the release to be in the interests of justice, as allowed by § 48.35(2).

Finally, Shannon argues that this court should reexamine the juvenile court's waiver order now that the case is concluded. At the time the juvenile court ordered the waiver, that order was appealed to this

---

[11] We conclude that both the juvenile court and the trial court were careful not to allow evidence that emphasized any juvenile court proceedings.

court, and the decision was affirmed. *Shannon L.L.,* No. 92-2094, unpublished slip op. (Wis. Ct. App. Dec. 30, 1992). The issue of juvenile waiver may be appealed at the time the juvenile court grants it, *see State ex rel. A.E. v. Circuit Court,* 94 Wis. 2d 98, 105d-e, 292 N.W.2d 114, 115-16 (1980) (on motion for reconsideration), or at the conclusion of the criminal case, *see* § 809.10(4), STATS. As Shannon concedes, there is no procedural basis for this court to reconsider that appeal.[12]

*By the Court.*—Judgment and order affirmed.

[12] We note that prior to this appeal Shannon brought a § 974.06, STATS., motion on the juvenile waiver issue. This was not proper procedure. Relief under § 974.06 is not available to an individual seeking to collaterally attack a juvenile waiver. *See generally State v. Langston,* 53 Wis. 2d 228, 231-32, 191 N.W.2d 713, 715 (1971) (holding that to allow a defendant to attack errors in the admission of evidence or faulty jury instructions long after his or her conviction through the use of the postconviction relief statute would render statutes which limit the time for appeal meaningless). The trial court correctly recognized this and dismissed the request for lack of jurisdiction to review the juvenile court proceeding.